UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20845-CIV-HIGHSMITH/DUBÉ

JULIO E. BORRERO,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #16), the Motion for Judgment by the Pleadings filed by the Plaintiff (D.E. #18) and the Motion to Remand Under Sentence Six (D.E. #19) pursuant to an Order of Reference entered by the Honorable Shelby Highsmith, United States District Judge. The issues before this Court are whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Julio E. Borrero (hereinafter "Borrero" or "Plaintiff") and whether there is new material evidence to warrant remand under sentence six.

**I. FACTS**

On August 8, 2002, the Plaintiff filed applications for disability insurance benefits and supplemental security income ("SSI"), alleging a disability onset date of May 8, 2002. (R. 46-49, 264-266).[1] The applications were denied initially and on reconsideration. (R. 24-29, 32-35). An

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

initial hearing was held on June 20, 2005. (R. 290-303).[2] Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 14-22). A request for review filed with the Appeals Council was denied. (R. 4-9).

The Plaintiff, aged 46 at the time of the hearing, testified that he completed the 4th grade in Puerto Rico. Borrero also testified that he can print in Spanish, takes a long time to read in Spanish, cannot read a short message in English or speak in English. (R. 295). Borrero stated that he last worked in January of 2000 as a roofer, which was his occupation since the late 1970's. (R. 295-296). The Plaintiff stated that while working he would do heavy lifting of 120 to 130 pounds with the assistance of another person, four or five times a day. (R. 296-297).

According to Borrero, he stopped working because he suffered from lower back and left knee pain. The Plaintiff testified that he cannot bend because of the pain in his left knee and lower back. (R. 297). He further testified that he can sit between one hour to an one hour and a half, and stand for five to ten minutes; after sitting for one hour and a half and then standing, he needs to lay down because of the pain. The Plaintiff added that he would need to rest or lay down for about one hour in an eight hour workday. (R. 298).

Borrero testified that he must keep his knee extended, if not, it hurts and swells. The Plaintiff added that he has received five injections which only provide short term relief. (R. 299). He also stated that the possibility of surgery had not been discussed. Borrero lives in an apartment with a companion which has three rooms and that his companion does not work. They rely on the Plaintiff's mother and sister for support. (R. 300).

The Plaintiff testified that he does not cook because he is not capable of standing "too long";

---

[2] Through counsel, at the administrative hearing, the Plaintiff amended his onset date to September 30, 2003. (R. 294).

sometimes helps with washing the dishes; goes shopping but stays in the car; and only drives "short times". (R. 300-301).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ.

On November 6, 2002, the Plaintiff was seen by Dr. Hector J. Meruelo for a consultative examination. (R. 152-155). Dr. Meruelo reported that the Plaintiff had previously been seen for a consultative examination on October 30, 2000, with the same complaints of left knee pain, low back pain and high blood pressure. Dr. Meruelo stated that the Plaintiff previously had two surgeries performed on his left knee. (R. 152).

Examination revealed that the Plaintiff walked with a moderate limp of the left knee but at a normal pace and using no devices. The Plaintiff was able to get in and out of a chair, and on and off the examination table with no difficulty. The Plaintiff had difficulty trying to tandem walk and walking on his heels and toes due to pain in his left knee. (R. 153). The Plaintiff had normal range of motion except for in his left knee. (R. 154).

The diagnostic impression was as follows:

> 1. Status post open surgery to the left knee on two different occasions apparently for meniscal or ligamental derangement. The present history, symptomatology, physical findings, functional capabilities, ambulation, etc. as given. The patient states that he is probably going to have some further surgery at Jackson Memorial Hospital, but we do not know when.
>
> 2. The patient continues to complain of low back pain. There is no radiculopathy and no neurological impairment. History, symptomatology, physical findings, functional and ambulatory capacities as given.
>
> 3. Again, he has arterial hypertension which at this time is well-controlled with the present medication.

3

    4. There is exogenous obesity.

(R. 155).

  A physical residual functional capacity assessment was completed on December 1, 2002, by Dr. I.B. Price a non-examining physician. (R. 157-164). The report stated that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. Additionally, it stated that the Plaintiff could stand, walk and/or sit (with normal breaks) 6 hours in an 8 hour workday; and push and/or pull was limited in the lower extremities. (R. 158). The report stated that the Plaintiff could frequently balance; occasionally climb a ramp/stairs, stoop, kneel, crouch and crawl; and could never climb a ladder, rope or scaffold. (R. 159). The Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. 160-161).

  On February 2, 2003 the Plaintiff was examined at the Pain Clinic at Jackson Memorial Hospital due to pain in his back. The Plaintiff reported that the pain level is a 2 out of 10 after taking Arthrotec. The pain was localized in the left L/5 area and the Plaintiff stated that cold compresses help to alleviate the pain. A facet block was administered and the Plaintiff was given a refill of Arthrotec. (R. 217). An X-ray taken on May 24, 2003 of the Plaintiff's lower back revealed degenerative joint disease. (R. 212).

  On September 27, 2003 Dr. Hernaldo Nunez completed a residual functional capacity assessment of the Plaintiff. (R. 176-182). The report stated that while the Plaintiff had limitations regarding his ability to lift, carry, sit, stand and walk; Dr. Nunez could not assess specific limitations. (R. 176-177). Dr. Nunez stated that the Plaintiff could frequently "simple grasp" and "fine manipulation" with both hands, and could occasionally use his right foot but never his left foot. (R. 178). Dr. Nunez opined that the Plaintiff could never climb, balance, stoop, crouch, kneel or crawl

due to pain. (R. 179). Dr. Nunez reported that due to poor mobility the Plaintiff would have to avoid all exposure to heights, moving machinery and vibrations; and would have to avoid moderated exposure to chemicals, noise, humidity, dust, temperature extremes and fumes. (R. 181). At the end of his report, Dr. Nunez stated that the Plaintiff should be referred to a specialist for a better opinion as he treats the Plaintiff primarily for high cholesterol and hypertension. (R. 182).

Progress notes from a September 30, 2003 visit to the Pain Clinic show that the Plaintiff has a history of chronic left knee pain which gets worse with sitting. The Plaintiff also reported short term relief after receiving trigger point injections. He was prescribed Ultracet and told to return in two months. (R. 208). A November 6, 2003 examination showed that the Plaintiff has padella chondromalacia and possible LMT. Borrero was scheduled for an MRI. (R. 205).

The Plaintiff returned to the Pain Clinic on December 2, 2003. The Plaintiff reported the pain level as 7 out of 10 when he does not take Ultracet, and 3 out of 10 when he does. The Plaintiff reported pain when standing and walking, and stated that he wakes up at night from pain. There was tenderness to palpation at L4-5. (R. 203).

On December 23, 2003, an MRI showed a minimal joint effusion and a small Baker's cyst. (R. 201). On February 17, 2004, the Plaintiff returned to the Pain Clinic and reported the pain level as being 3 out of 10, and he received a medical branch and facet block. (R. 198-200).

On March 16, 2004, progress notes from the Pain Clinic reveal that the Plaintiff was continuing to experience lower back pain which was worse upon awakening and walking, but was relieved with his medications. (R. 197). Progress notes from the Pain Clinic on June 3, 2004 reveal that the Plaintiff was experiencing pain in the lower back and neck. Examination showed antalgic gait but the Plaintiff could walk without assistance. (R. 195).

Between July 1, 2004 through October 14, 2004, the Plaintiff continued to receive treatment at the Pain Clinic for lower back pain. Borrero was told to continue taking his medications. (R. 187-190).

On December 20, 2004, the Plaintiff underwent an MRI which revealed, "Both the transiting and exiting right L5 nerve roots are impinged upon by disc material." (R. 185). The Plaintiff received an epidural steroid injection at L4-5 on February 11, 2005. (R. 222). During an examination on February 25, 2005 at the Pain Clinic, the Plaintiff reported a 45% improvement but stated the pain was "almost back to baseline." The Plaintiff was advised that he should begin physical therapy and that he needed a second epidural injection. (R. 219).

On April 12, 2005, Dr. Nunez completed a second residual functional capacity questionnaire. (R. 225-233). Dr. Nunez reported that the Plaintiff could occasionally lift/carry up to 10 pounds but never over that amount. (R. 227). He opined that the Plaintiff could sit 4 hours in an 8 hour workday; stand for an hour; and walk for an hour. He also added that the Plaintiff could sit, stand and walk for less than an hour without interruption. (R. 228). The report said that the Plaintiff could continuously "simple grasp" and "fine manipulation" with both hands; could frequently push/pull with his right foot; and occasionally push/pull with his left foot. (R. 229). Dr. Nunez stated that the Plaintiff could never climb, balance, stoop, crouch, kneel or crawl; and could continuously reach, handle, feel, hear and speak but could never push/pull. (R. 230-231). The report also stated that the Plaintiff should avoid all exposure to heights and moving machinery; avoid moderate exposure to humidity and vibrations; avoid concentrated exposure to temperature extremes and fumes; and would not have to avoid chemicals, noise or dust. (R. 232).

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff

retained the residual functional capacity to perform light work. Specifically, the ALJ found that the Plaintiff,

> ... has the ability to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday.

(R. 20).

The ALJ than concluded that the Plaintiff was not disabled based on the following:

> Based on an exertional capacity for light work, the claimant's age, education, work experience, section 416.969 of Regulations No. 4, Rule 202.16 in Table No. 2 would support a conclusion of "not disabled."

(R. 21).

## II. **LEGAL ANALYSIS**

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th

Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's

ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred by improperly rejecting the Plaintiff's subjective complaints.

In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb 847 F. 2d at 702. In the instant case, the first prong of the Lamb test was satisfied. The ALJ found that the Plaintiff's impairments could "reasonably be expected to produce some of the pain and

other symptoms alleged." (R. 19). The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Id., at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Id., at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id. Further, a clearly articulated credibility finding with substantial supporting evidence in the record will not be disrupted by a reviewing court. Foote v. Chater, 67 F. 3d 1553, 1562 (11th Cir. 1995).

After a review of the objective medical evidence contained in the record, the ALJ determined that the objective evidence did not support the Plaintiff's allegations of severe pain and that the Plaintiff was not entirely credible and stated as follows:

> The objective medical findings and the level of treatment are not suggestive of this level of severity. In the absence of objective medical evidence to support these allegations, the ALJ gives minimal weight to this testimony. The claimant's complaints regarding the frequency, severity and duration of his back pain and lower extremity pain do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found. The record contains no reported continuous side effects of medication. When side effects are mentioned, the treatment notes reflect that the medication was adjusted or changed.

(R. 19).

This Court agrees with the Defendant that the ALJ's specifically set for his reasoning for rejecting the Plaintiff's subjective complaints, they are not vague and are consistent with the standards set out by the Eleventh Circuit. Additionally, this Court finds the ALJ's decision to reject the Plaintiff's subjective complaints is supported by substantial evidence. As noted above, the Plaintiff's testimony reveals that he has had consistent pain for several years in his lower back and left knee; a cursory review of his medical treatment however demonstrates that through treatment and medication, the Plaintiff's pain was alleviated. Impairments that are controllable or amenable to treatment do not support a finding of disability. Dawkins v. Bowen, 848 F. 2d 1211, 1213 (11th Cir. 1988).

Further, reports from the Pain Clinic at Jackson Memorial Hospital show that he reported consistently reported reduced pain levels throughout his treatment. The Plaintiff testified and his medical records confirm that despite his allegations of severe pain he is able to ambulate without the assistance of a walking device. Additionally, the Plaintiff was told to walk for exercise and no surgery was recommended by any treating source. The aforementioned record evidence all support the ALJ's decision to reject the Plaintiff's subjective complaints.

11

The Plaintiff's second point of contention is that the ALJ's RFC assessment is incomplete and unexplained thus not supported by the substantial evidence. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... his work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Plaintiff contends that the ALJ improperly failed to explain or properly evaluate the effect that the Plaintiff's multiple impairments would have on the Plaintiff's ability to work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

More specifically, the Plaintiff contends that the ALJ failed to support his RFC determination by pointing with specificity to the medical evidence contained in the record.

This Court agrees with the Plaintiff. After a review of the ALJ's report that after rejecting the Plaintiff's testimony and assigning little weight to the opinion of the Plaintiff's treating physician, the ALJ made a RFC determination without explaining his reasons for doing so. (R. 20). It is the opinion of this Court that the case should be remanded and a new hearing should be held so that the ALJ may form a properly articulated RFC.

While error is present, this Court cannot find on the record that an award of benefits to the Plaintiff is required at this time. Accordingly, this Court recommends the decision by the ALJ be REVERSED and this cause REMANDED for further proceedings consistent with this Report and Recommendation.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be reversed. Accordingly, the Motion for Summary Judgment filed by the Defendant (D.E. #16) should be **DENIED** and the Motion for Judgment by the Pleadings filed by the Plaintiff (D.E. #18) should be **GRANTED in part**. The Plaintiff's Motion for Remand is **DEEMED as MOOT**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Shelby Highsmith, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 5 day of June, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE